### Smith v. Hawley.

PRACTICE : *Entry of judgments of Probate Court in District Court.* If a judgment be regularly rendered in the Probate Court, and a transcript thereof be filed in the District Court, but the entry of the same in the execution-docket be defective, a purchaser of the defendant's real estate thereafter, with knowledge of the entry, will not hold it divested of the lien. His duty is to look to the transcript.

——: ——. Judgment being entered in the Probate Court against W. G. B. and J. L. B., and a transcript thereof in due form having been filed in the District Court, the clerk docketed the same on the execution-docket " W. G. & J. L. B." *Held* sufficient.

Petition in error to the District Court for Dodge County. The facts are fully stated in the opinion of the Court.

*N. H. Bell*, for plaintiffs in error.

The sections of our statute referred to above make these judgments a lien from the day of the *filing*, in the same manner and to the same extent as if they had been rendered in the District Court. The intention of the law, then, is evidently to give to the judgments of inferior courts, when the transcript is filed with the clerk of the District Court, the same standing as if they had been rendered in that court ; and we can see no reason in the nature of things why a party should have any more " notice " in the one case than in the other. A party searching for judgment liens can find them as readily within the folds of a justice's transcript as within the covers of a court journal. It might with as good reason be asserted that the judgments of our District Courts are not liens upon real estate, unless entered on

SMITH v. HAWLEY.

the execution-docket. The entry, we take it, is for the same purpose in both cases.

As to the second question, we are willing to submit to the commonest understanding whether W. G. & J. L. Bowman means any thing else than W. G. Bowman and J. L. Bowman. The law will not allow a man to stultify himself in order that he may claim the immunity and protection allowed to infants and idiots. The well-known rule with regard to notice is, that whatever is sufficient to lead a man of ordinary prudence and caution to inquiry is notice sufficient; and, if he stops short of reasonable inquiry, he is guilty of negligence, and will not be protected. And, when a purchaser has knowledge of any fact sufficient to put him upon inquiry as to the existence of some right or title in conflict with that which he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered a *bona-fide* purchaser. *Williamson* v. *Brown*, 15 *N. Y.*, 354.

We think, too, that the law requiring deeds and mortgages to be properly acknowledged and recorded, to make the record notice to subsequent purchasers, &c., does not apply to a case like the present, for the reason that the record of a deed or mortgage is for the very purpose of imparting notice; and a defect or omission in the record is a defect or omission in the notice.

Is it not enough, then, that the entry in the execution-docket be such as to suggest danger? — such as would lead a man of ordinary prudence or caution to further inquiry, who, if he fails to follow that lead, is guilty of negligence?

*Munger & Ghoste*, for defendant in error.

### Smith *v.* Hawley.

I. No other construction of the statute can be properly and safely made which will afford that protection to the public in searching after encumbrances to title, and which was the obvious intention of the law-makers, than the construction that the entry of the case must be made upon the execution-docket. To say that parties are required, in every search after a perfect title, to examine through all the musty files of the clerk's office which have been accumulating for years, seems to us absurd; or, using the language of an eminent judge, an instrument might as well be buried in the earth as in a mass of records without a clew to its whereabouts; and in support of which we present the following cases: 15 *Iowa*, 510, *Barney* v. *McCartney;* 1 *John. Ch.*, 288, *Frost* v. *Beekman;* 12 *Iowa*, 14, *Miller* v. *Bradford et al.;* 25 *Iowa*, 184, *Whalley* v. *Small et al.; Rev. Statutes of Nebraska*, 492.

II. The defendant in error, in his petition in the Court below, alleges, that at the time of the rendition of said judgments, and at the time of his purchase, the said W. G. Bowman and J. L. Bowman were partners, doing business under the firm-name of W. G. & J. L. Bowman, in the State of Nebraska, and not incorporated. This fact, we think, was sufficient to mislead the said Hanbury, and justified him in the belief that the judgments, as entered in the execution-docket, were rendered against said Bowmans as a firm; and, if rendered against them as a firm in the firm's name, said judgments were not liens upon the real estate of W. G. Bowman and the land in question. *Rev. Statutes of Nebraska*, p. 397, sect. 27.

III. W. G. & J. L. Bowman can only be taken and understood to represent them collectively, and cannot be understood to represent them in severalty; and if this be true, that the entry made on the execution-docket

could only represent the Bowmans in a collective sense, then they must represent an association; and the judgments so entered would not give notice of liens upon the real estate of an individual member of such association. *Rev. Statutes of Nebraska,* p. 397, sect. 27; *Burrill's Law Dictionary, definition of Association; Parsons on Partnerships,* 129, *Note O, Op. of Story, J.*

LAKE, J.

In the Court below, the defendant in error files his petition to enjoin the plaintiffs in error from selling certain real estate on execution. A temporary injunction was obtained, which was afterwards, on the overruling of a general demurrer to the petition, made perpetual by the final judgment of the Court. To reverse this judgment, this proceeding is brought.

The record shows, that on the fifth day of September, 1870, the plaintiff in error, C. M. Smith, recovered two judgments in the Probate Court of Dodge County against W. G. Bowman and J. L. Bowman; transcripts of which were filed in the office of the clerk of the District Court on the twenty-ninth day of the following December, to make them liens upon the real estate of the defendants therein, as provided in sect. 561 of the *Code of Civil Procedure.*

In entering the cases on the execution-docket, the clerk entitled them as *C. M. Smith* v. *W. G. & J. L. Bowman,* and afterwards issued executions thereon in due form, directed to the said Dunham M. Strong, who, as sheriff of the county, levied the same upon the real estate in question, and advertised it for sale on the sixteenth day of December, 1871. The property levied upon was taken as the property of the said W. G. Bowman; the legal title to which was in him when said

transcripts were filed, but, before the issuing of the execution, had been conveyed to the defendant in error on the fourth day of April, 1871, who claims to hold the same, wholly freed from, and entirely divested of, any lien on account of said judgments. And this claim is based solely on the ground that the cases were defectively -docketed by the clerk ; that they should have been docketed as judgments against " W. G. Bowman and J. L. Bowman," and not as against " W. G. & J. L. Bowman," in order to make them liens upon the separate estate of W. G. Bowman.

This position of the defendant in error is wholly untenable. Sect. 562 of the Code provides, that " such judgment, if the transcript be filed in term-time, shall have a lien on the real estate of the judgment-debtor from the day of filing : if filed in vacation as against such judgment-debtor, said judgment shall have a lien from the day of filing ; and as against subsequent judgment-creditors, from the first day of the next succeeding term, *in the same manner, and to the same extent, as if the judgment had been rendered in the District Court.*"

Now, the judgments in question were properly rendered against both of the Bowmans individually. The transcripts contained all that was requisite in such cases, and were duly filed. Up to this point no defect is pointed out, nor any objection made. But, in his petition, the defendant in error states, that, at the time of his purchase, he caused the execution-docket to be examined, and found the two judgments entered therein, as before stated ; but knowing that the two Bowmans were then, and for a long time before had been, doing business as a firm, under the name and style of " W. G. & J. L. Bowman," he had good reason to and did suppose that they were rendered against them as copartners only, and constituted no lien upon the individual property of either of the partners.

SMITH *v.* HAWLEY.

It is impossible for me to accord to this statement the utmost degree of candor. To my mind it is incredible that an attorney, or even any other person possessed of sufficient legal knowledge to understand that the execution-docket was the proper place to look for judgment liens, could have examined these entries, and concluded therefrom that the real estate of W. G. Bowman was not effected thereby; especially so when it is remembered that the transcripts themselves were at hand for reference, in case of any uncertainty or ambiguity in the entries made by the clerk.

I am entirely unwilling to believe that any one engaged in the examination of titles has so little sagacity as this; but prefer to regard it as a case, where, by a narrow construction of the statute and a sharp technicality, it is hoped to cut out a judgment-creditor, and relieve an estate from a lien which the purchaser knew, or at least had good reason to know, rested upon it.

But, if there has been a substantial observance of the statutes before referred to, it is of little consequence whether the purchaser had actual knowledge of the existence of the liens or not. His ignorance of the legal effect of what was done furnishes no ground for relief. I am of the opinion that the action of the clerk, if not strictly technical, was at least substantially correct, and the judgments were valid liens upon the real estate in controversy at the time it was purchased by the defendant in error, and that he took it charged with the amount due thereon.

The judgment of the District Court, being in conflict with these views, is reversed, and cause remanded.

Judgment reversed, and cause remanded.